CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
AUG 16 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JULIE ANN REINHARDT, | ) | CASE NO. 5:11CV00073 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's May 1, 2007 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated March 19, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since December 31, 2005, her alleged date of disability onset.[1] (R. 21.) The Law Judge determined plaintiff's degenerative disc

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she

1

disease of the lumbosacral spine was a severe impairment. (R. 21.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 22.) Further, the Law Judge found that, prior to January 21, 2010, plaintiff possessed the residual functional capacity ("RFC") to perform the full range of sedentary work. (R. 22-26.) The Law Judge also found that, beginning on January 21, 2010, plaintiff had the RFC to perform a range of sedentary work that was limited by sitting less than 5-10 minutes at a time and by an inability to bend or lift.[2] (R. 26-27.)

At this point in the sequential analysis, the Law Judge seems to have conflated the final question of whether plaintiff could perform her past relevant work, and, if not, whether alternate gainful activity was available to her. He first found plaintiff able to perform her past relevant work prior to January 21, 2010. (R. 27.) Applying the Dictionary of Occupational Titles ("DOT"), Code 201.362-030, he determined that plaintiff was able to engage in her past relevant work as "generally performed." (R. 27.) He went further, however, to consider in the alternative that plaintiff could not perform her past relevant work. (R. 27.) When he applied the Medical-Vocational Guidelines ("Grids")[3] and Social Security Rulings ("SSR") 83-12 and 83-14, he determined that there were significant numbers of other jobs in the national economy which plaintiff could perform. (R. 27.) In summary, he found that plaintiff was not disabled prior to January 21, 2010. (R. 27-28.)

However, he found that since January 21, 2010, plaintiff could not perform her past relevant work. (R. 28.) Then, considering plaintiff's age, education, work experience, and RFC,

---

became disabled prior to the expiration of her insured status, which is December 31, 2010. *See* 20 C.F.R. § 404.131(a); (R. 21, 168.)

[2] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

2

he found that no jobs existed in significant numbers in the national economy which plaintiff could perform. (R. 28.) Accordingly, he found that plaintiff was entitled to a period of disability and disability insurance benefits beginning on January 21, 2010. (R. 29.)

Plaintiff appealed the Law Judge's March 19, 2010 decision to the Appeals Council. (R. 1-3.) In its July 6, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

3

Case 5:11-cv-00073-MFU-BWC   Document 14   Filed 08/16/12   Page 3 of 12   Pageid#: 639

Plaintiff argues that the Law Judge's finding that she was disabled beginning January 21, 2010, but not before, is erroneous a matter of law and not supported by substantial evidence. (Dkt. No. 8, at 1, 8.) She contends, instead, that she was disabled within the meaning of the Social Security Act as of April 25, 2007. *Id.* at 1. The undersigned will address those arguments below.

First, Plaintiff asserts that the Law Judge's finding that she did not meet or medically equal Section 1.04(A) of the Listed Impairments is not supported by substantial evidence. To meet Section 1.04 of the Listed Impairments, a claimant first must demonstrate a disorder of the spine[4] resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. To meet Section 1.04(A) specifically, there also must be evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy associated with muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, a positive straight leg raising test (sitting and supine). 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04(A). Plaintiff was diagnosed with nerve root compression, but this diagnosis first appeared in a February 11, 2010 treatment report by James R. Schwartz, M.D., who was analyzing plaintiff's February 1, 2010 MRI. (R. 556-558.) No treating physician indicated that plaintiff suffered nerve root compression prior to that point, and both of plaintiff's MRIs before February 1, 2010 show that her herniated disc abutted and displaced the S1 nerve root rather than compressed it.[5] (R. 363, 521-522.) There is no evidence specifically relating the diagnosis of nerve root compression back before those dates.

---

[4] The listed examples of a disorder of the spine include herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

[5] Allan H. Fergus, M.D., did suggest that plaintiff may have "worsening compression on the S1 root" in his December 20, 2007 treatment note. (R. 518.) However, Dr. Fergus referred to it as only a possible explanation, along with neuropathic pain, for plaintiff's right leg pain. (R.

4

Moreover, the Law Judge considered the record in its entirety, which demonstrates that plaintiff's symptoms of nerve root compression were inconsistent before January 21, 2010. The medical evidence before April 9, 2004 demonstrates positive straight leg tests, a very large herniated disc, and diminished sensation in the S1 nerve root. (R. 340-341, 374.) However, plaintiff underwent a laminotomy, removal of the free fragment, and disectomy on April 9, 2004. (R. 343-344.) She improved greatly after surgery, and on May 12, 2004, she had no pain or weakness, demonstrated significantly improving numbness, and produced a negative straight leg test. (R. 368-369.) Reports from May 21, 2004 through November 11, 2005 indicated no pain and a full range of motion in her spine, normal gait, and normal reflexes. (R. 397-398.) On March 13, 2006, plaintiff did display a positive straight leg raise test and decreased range of motion in her spine, but the tests revealed normal motor function, reflexes, and gait. (R. 382-383.) An April 6, 2006 examination showed plaintiff was experiencing no pain and a full range of motion in her spine, negative straight leg tests, and normal gait, though the note reports plaintiff's history of chronic back pain, tenderness over her spine, and decreased reflexes. (R. 364-365.) An examination on June 7, 2006 showed no pain and a full range of motion in her spine, a normal gait, no joint pain, and normal motor strength and reflexes. (R. 379-381.) Plaintiff also told her physician that her back pain was not chronic, and that she was not taking any pain medications. (R. 379.) However, on June 22, 2006, plaintiff reported that she suffered chronic and worsening back pain.[6] (R. 361-362.)

---

518.) He also indicated that plaintiff had no musculoskeletal pain and full range of motion, no focal neurological symptoms and weakness, no reduction in motor strength, and her December 18, 2007 MRI showed displacement and abutment of the S1 nerve roots rather than compression. (R. 517-518, 521.)

[6] The Law Judge made note of the fact that plaintiff was being evaluated by her doctor for a Commercial Driver's License during her June 7, 2006 examination. (R. 23-24, 379.)

An April 19, 2007 examination revealed that plaintiff demonstrated a slow and cautious gait, worse than normal reflexes, and painful flexion and tenderness in her spine, but with normal posture and a negative crossed straight leg raising test. (R. 438-440.) Seth Tuwiner, M.D., a state agency consultant, reported on November 14, 2007 that plaintiff exhibited decreased lumbar range of motion, antalgic gait, a positive straight leg test, and severe posture and lifting limitations, though with normal motor strength and reflexes. (R. 497-500.) A December 10, 2007 report also produced similar findings, with painful flexion, right leg pain, reduced range of motion, and painful movements. (R. 519-520.) However, ten days later, an examination revealed no pain and a full range of motion, along with normal neurological findings, though with continuing right leg pain. (R. 517-518.) A May 19, 2008 report documents that plaintiff complained that her symptoms and pain were worsening, and the examination showed painful movement and flexion of her spine, reduced reflexes and sensation, and some spinal tenderness, but, otherwise, was normal. (R. 523-524.) Plaintiff underwent epidural steroid injections on August 26, 2008 and November 18, 2008, with reports indicating that her pain was chronic and disabling, and that conservative treatment had failed to alleviate her symptoms. (R. 530-535.) The injections provided no more than mild relief. (R. 544.) An examination on February 20, 2009 showed no apparent limitations in mobility, normal gait, and negative straight leg raising tests, but it also indicated limited and painful spine flexion, spine tenderness, spine sensory impairment, and reduced reflexes, and that plaintiff was "miserable with pain." (R. 544-547.) The treating physician discussed the possibility of surgery, specifically a L4-5 and L5-S1 fusion. (R. 547.) A June 15, 2009 report, the final report before January 21, 2010, showed antalgic gait, spine sensory impairments, limited and painful flexion, some limitations in her range of motion,

6

and a positive straight leg raising test. (R. 552-555.) The surgical option was again discussed, though plaintiff was reluctant to pursue it. (R. 554.)

To repeat, plaintiff had never been diagnosed with nerve root compression prior to February 2010. Moreover, the record reflects that plaintiff did not consistently present the characteristic symptoms under Section 1.04(A) of the Listed Impairments that would qualify her for benefits as a matter of regulatory law. The Law Judge has authority to resolve conflicts or inconsistencies in the record, and the undersigned will not undertake to re-weigh conflicting evidence, make my own credibility determinations, or substitute my judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). Ultimately, there is substantial evidence in support of his finding that plaintiff did not suffer an impairment which met or medically equaled a listed impairment, at least prior to January 21, 2010.

Second, plaintiff argues that the Law Judge's RFC finding for the period before January 21, 2010 is inconsistent with the record. She argues that the Law Judge improperly evaluated her pain, credibility, and the opinion of Seth Tuwiner, M.D., the state agency consultative examiner. (Dkt. No. 8, at 10, 12.) In those regards, the Law Judge certainly considered plaintiff's allegations of constant, severe lower back pain, ultimately finding that it limited her to sedentary work before January 21, 2010. (R. 22-23.) He determined that, while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects were not credible prior to January 21, 2010, to the extent they were inconsistent with the his RFC assessment. (R. 23.) The Law Judge relied on plaintiff's conservative treatment record, her intermittent complaints of pain before May 2008, her generally normal gait before June 2009, and long gaps in her treatment. (R. 24-25.) Furthermore, the Law Judge found that the relatively minimal objective

7

findings before January 2010 did not support claimant's allegations of limitations in her daily activities and pointed to several of her daily activities as diminishing the persuasive value of her allegations. (R. 25.)

Plaintiff is correct that she need not provide objective evidence to support subjective allegations of disabling pain, and that the Law Judge must consider more than the objective evidence of record in making his credibility finding. *Hines v. Barnhart*, 453 F.3d 559, 564-566 (4th Cir. 2006); 20 C.F.R. § 404.1529(c)(3). However, objective evidence is an important ingredient in corroborating the validity of plaintiff's allegations. *Id.* There is no question that the Law Judge considered the entire record, including plaintiff's treatment notes, daily activities, and allegations of pain. Moreover, the observations by the Law Judge that the intensity of plaintiff's pain has been inconsistent over the duration of her treatment and that she has had several gaps in her treatment,[7] undermine her credibility regarding her allegations of disabling pain. Ultimately, his findings are supported by substantial evidence.

Nor did the Law Judge err by according some, but not controlling, weight to the evidence of the State Agency consulting examiner, Dr. Tuwiner. (R. 497-501.) As the Law Judge noted, Dr. Tuwiner's findings and conclusions were not entitled to controlling weight as they were based on a single examination.[8] Moreover, Tuwiner had limited access to plaintiff's treatment

---

[7] There are several extended gaps in plaintiff's treatment record including, among others, 10 months from June 2006 to April 2007 (R. 361, 438.), 7 months from April 2007 to November 2007 (R. 439,499.), 5 months from December 2007 to May 2008 (R. 517, 523.), and 6 months from June 2009 to January 2010 (R. 552, 565.) A Law Judge may consider a claimant's decision to not seek treatment in his credibility analysis, unless the plaintiff has put forward evidence that she was unable to afford treatment or was refused access to treatment. *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Plaintiff has not made this argument, nor is there clear evidence in the record that these gaps are a result of plaintiff's finances.

[8] The undersigned struggles with whether, in practice, the Commissioner should be free to disregard evidence which supports a claim when that evidence is adduced by the Commissioner's own state agency examiner. However, the regulations allow for the same consideration of this type of expert witness as applies to any one-time examiner.

8

records, namely only the April 19, 2007 examination note, and none of plaintiff's MRIs. (R. 497-501.) Subsequent evaluations in 2007, 2008, and early 2009 by plaintiff's treating sources do not note positive straight leg tests, antalgic gait, or the same degree of postural and lifting limitations. (R. 517-518, 523-524, 544-547.)

Now, it cannot be debated that plaintiff's condition worsened during 2009 to the point in January 2010 the Law Judge concluded she was disabled. There was a positive straight leg test in June 2009 (R. 552-555.), but the treating source records do not corroborate Dr. Tuwiner's postural and lifting limitations. Frankly, the undersigned would have given Dr. Tuwiner's evidence more weight, based on the positive straight leg test results, but that is not the question posed on judicial review. There is substantial evidence supporting the Law Judge's determination as to the weight of the evidence.

Third, plaintiff argues that the Law Judge erred by failing to provide a convincing rationale for why he selected January 21, 2010 as plaintiff's disability onset date. A Law Judge sets the onset date on the date when it is "most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death." SSR 83-20, at *2-3 (1983). The Law Judge must consider the claimant's allegations, work history, and the medical and other evidence concerning impairment severity, and he must based his finding on facts that are consistent with the medical record. *Id.* at *2-3. The Law Judge based his finding as to plaintiff's onset date on the January 21, 2010 treatment record from James Schwartz, M.D., plaintiff's treating orthopedist. There, Dr. Schwartz noted that plaintiff's x-rays indicate facet anthropathy, retrolisthesis, and the "obliteration" of the L5-S1 disc space. (R. 565.) He opined

9

that plaintiff could not sit for a long period of time, lift, or bend. He advised that plaintiff could not do sedentary work and, otherwise, met the standards for disability. (R. 565.)

It is clear that this report provided the basis for the Law Judge's decision awarding benefits beginning January 21, 2010, but not before. The six month gap in plaintiff's treatment record prior to January 2010 provided substantial evidence for the Law Judge's decision to not fix an earlier onset, and there is nothing in the report which would have compelled the Law Judge to fix an earlier onset. Though the undersigned likely would not have resolved this conflicting evidence the same way, there is substantial evidence to support the Law Judge's determination of onset.

Fourth, plaintiff argues that the Law Judge erred by failing to consider the side effects of plaintiff's medications in his RFC assessment. In that regard, an RFC assessment must be based on all relevant evidence of record, including limitations or restrictions imposed by side effects of medication. SSR 96-8p, at *5 (1996). Plaintiff testified on several occasions that her medications caused side effects, which, she offers, should have been included in her RFC. (R. 202, 211, 217, 249, 267; Dkt. No. 8, at 17.) While it is not entirely clear how the Law Judge specifically accounted for this evidence, he discussed at length plaintiff's alleged functional limitations and the entirety of the treatment record. (R. 22-26.) Notably, none of plaintiff's treating physicians report any vocationally relevant side effects in their treatment notes, and plaintiff's own testimony is inconsistent in this regard. Furthermore, she did not mention any side effects in her hearing testimony and claimed she suffered from no, or only minimal, side effects, in agency forms she submitted during the application process. (R. 176, 235, 278.) Accordingly, the Law Judge did not err by failing to include specific findings relating to plaintiff's alleged medication side effects in his determination of her RFC.

Finally, plaintiff asserts that the Law Judge erred by not obtaining vocational expert testimony regarding the effect of her non-exertional impairments on her ability to work prior to January 21, 2010. Plaintiff asserts that because she suffered non-exertional limitations before January 21, 2010, vocational expert testimony was required to determine if there was other work that plaintiff could perform during that period. (Dkt. No. 8, at 17-18.) Now, it is disconcerting to the undersigned whenever a Law Judge engages in alternative findings at the fourth level of the sequential evaluation. The basis for this concern is that such alternative findings send a mixed message that is difficult to discern on judicial review. Under the regulations, a Law Judge should stop the sequential inquiry upon a finding that the claimant can perform his/her past relevant work. 20 C.F.R. § 404.1520(a)(4). Moreover, it is true that if plaintiff was unable to perform her past relevant work before January 21, 2010, vocational evidence would have been required because the record is replete with non-exertional limitations. 20 C.F.R. Pt. 404, Subpt. P., App. 2; *Shively v. Heckler*, 739 F.2d 987, 989 fn1 (4th Cir. 1984); *Hincher v. Barnhart*, 362 F.Supp.2d 706, 712 (W.D.Va. 2005).

Here, the Law Judge's determination that plaintiff could perform her past relevant work prior to January 21, 2010 is supported by substantial evidence, thus ending the necessity for further inquiry by the Court. Whether vocational evidence was necessary becomes a moot point.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within

fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

8/16/2012
Date